UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.B.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 20-cv-06231-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 20 |

Plaintiff J.B.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* J.B. contends that the administrative law judge ("ALJ") erred in four respects. First, J.B. contends that the ALJ erred in improperly evaluating the medical opinions of the state-agency consultants and his treating nurse practitioner. Second, J.B. contends that the ALJ failed to provide sufficient reasons for discounting his subjective testimony. Third, J.B. contends that the ALJ erred in failing to find that his impairments meet or medically equal a listed impairment. Fourth, J.B. contends that the ALJ erred in assessing his residual functional capacity ("RFC").

The parties have filed cross-motions for summary judgment. The matter was submitted

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. *See* Dkt. No. 1. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants J.B.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands this matter for further administrative proceedings consistent with this order.[3]

## I. BACKGROUND

J.B. first filed an application for supplemental security income on September 5, 2018, when he was 47 years old, alleging that he has been disabled since December 12, 2017 due to diabetes, low back pain / sciatica, and neuropathy. AR[4] 68–69. On reconsideration, J.B. alleged that the pain in his back and legs had increased, and that he had developed additional mental health conditions, including depression. AR 78–79.

J.B. has a high school education. AR 70. He worked for twenty years as a construction worker (1991 to 2011) and then for six years as a forklift driver (2011 to 2017). AR 190.

J.B.'s application was denied initially and on reconsideration. AR 75, 89. An ALJ held a hearing on October 22, 2019 and subsequently issued an unfavorable decision on December 17, 2019. AR 12–25. The ALJ found that J.B. had not engaged in substantial gainful activity since September 5, 2018, the date of his initial application. AR 17. She further found that J.B. has the following severe impairments: "lumbar degenerative disc disease with neuropathy and low back pain." AR 17. However, the ALJ concluded that J.B. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations (20 C.F.R. Part 404, Subpart P, Appendix 1). AR 18.

The ALJ determined that J.B. has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following exertional limitations: "[The claimant can] lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for one hour at a time for a total of six hours in an eight-hour workday; sit for one hour at a time for a total of six hours in an eight-hour workday, and when sitting, would need to be able to shift or stretch in his chair. The claimant

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636; Fed. R. Civ. P. 73; Dkt. Nos. 8, 9.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 15.

would need to be able to alternate positions after each of these activities.  The claimant is able to frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.  The claimant should avoid concentrated exposure to extreme heat and cold, wetness, and humidity." AR 19.  The ALJ found that after comparing J.B.'s RFC with the physical and mental demands of his past relevant work, J.B. is unable to perform past relevant work.  AR 23.  However, the ALJ found that J.B. is able to perform other jobs existing in significant numbers in the national economy, such as cashier, ticket seller, and information clerk.  AR 24.  Accordingly, the ALJ concluded that J.B. was not disabled, as defined by the Act, from the application date of September 5, 2018 through the date of the decision.  AR 24.

The Appeals Council denied J.B.'s request for review of the ALJ's decision.  AR 1–3.  J.B. then filed the present action seeking judicial review of the decision denying his application for supplemental security income.

## II.     LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012), *superseded by regulation on other grounds*; internal quotation marks omitted*)*; *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation,

the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

### III. DISCUSSION

J.B. raises four challenges to the ALJ's decision. First, J.B. contends that the ALJ erred in evaluating the persuasiveness of the medical opinions of the state-agency consultants and his treating nurse practitioner. Second, J.B. argues that the ALJ erred in concluding that his testimony about his limitations was not consistent with the medical evidence. Third, J.B. argues that the ALJ erred in finding that his impairments do not meet or equal a listed impairment. Fourth, J.B. argues that the ALJ erred in assessing his RFC, contrary to the medical evidence in the record. The Court agrees that that the ALJ erred in her assessment of the medical opinion evidence and in her determination that J.B.'s statements about his limitations were inconsistent with the medical evidence. Because the Court finds the ALJ erred in these respects, the Court also finds that the RFC is not supported by substantial evidence and that the ALJ erred in finding that J.B.'s impairments do not meet or equal a listed impairment.

#### A. Medical Opinion Evidence

J.B. argues that the ALJ's assessment of the state agency consultants' medical opinions and nurse practitioner Sharonne Rogers's opinion as both "somewhat persuasive" is inconsistent with the record and so not supported by substantial evidence. The Court agrees in part.

Under the regulations that apply to J.B.'s application,[5] ALJs are required to evaluate the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §

---

[5] On January 18, 2017 the Commissioner promulgated new regulations concerning the evaluation of medical opinions. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). These new regulations apply to all applications for benefits filed after March 27, 2017. *Id.*; 20 C.F.R. § 416.920c. Since J.B.'s application was filed after March 27, 2017, these new regulations apply to his case. *See* AR 68. In light of these new regulations, the parties dispute the extent to which Ninth Circuit caselaw decided under the prior regulations retains force. The Court finds that a straightforward application of the new regulations is sufficient here to decide the case and so does not need to resolve this dispute.

4

416.920c. The first two factors are considered the most important, and the ALJ is required to explicitly address them in his or her decision. *Id.* § 416.920c(b)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id.* "Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [the ALJ] considered the medical opinions' and 'how persuasive [the ALJ] find[s] all of the medical opinions.'" *V.W. v. Commissioner of Social Security*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (citations omitted); 20 C.F.R. §§ 416.920c(a) and (b). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *See Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) (finding that, under the new regulations, "[t]he Court must . . . continue to consider whether the ALJ's analysis has the support of substantial evidence."); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, *if* supported by substantial evidence, shall be conclusive") (emphasis added).

Here, in connection with J.B.'s initial application, Joan Bradus, M.D., a state agency consultant, reviewed the medical evidence in J.B.'s file through September 2018. In her November 20, 2018 writeup of objective findings, which relied on physical exams from March 2017 and September 2018, she wrote: "clmt's [claimant's] dm [diabetes mellitus] is under better control and clmt's insulin dose is being lowered. Clmt 'feels much bet[t]er.' … Clmt also has back pain, again, improved significantly with baclofen. Clmt has also been prescribed PT. No imaging in file; no gait or neuro exams even though clmt is reported to have +SLR [positive straight-leg raise] bilaterally. At FO, there were no observed problems with sitting, standing or walking. As evidence does not suggest that clmt has listing level impairments from neuropathy or radiculopathy, we do not need further development—despite the lack of complete exams of imaging." AR 71.

Dr. Bradus also assessed J.B.'s residual functional capacity. AR 73–74. In her assessment of J.B.'s exertional limitations, she wrote that J.B. could lift and/or carry (including upward pulling) 50 pounds occasionally and 25 pounds frequently. AR 73. She wrote that for a total of 6

5

hours in an 8-hour workday, J.B. could stand and/or walk (with normal breaks); he could also sit (with normal breaks) for the same amount of time. *Id.* She also wrote that J.B. had an "unlimited" ability to push and/or pull (including operation of hand and/or foot controls). *Id.* As for J.B.'s postural limitations, she wrote that J.B. could "frequently" climb ramps/stairs, balance, kneel, crouch, and crawl. AR 73–74. She also wrote that J.B. could "occasionally" climb ladders/ropes/scaffolds and stoop (i.e., bend at the waist). AR 73. Finally, she wrote that J.B. did not have manipulative, visual, communicative, or environmental limitations. AR 74. As a result, she determined that J.B. was "not disabled." AR 75.

On reconsideration, I. Herman, M.D., reviewed the medical evidence in J.B.'s file and assessed his residual functional capacity, determining that J.B. was "not disabled." AR 87, 89, 91. In Dr. Herman's findings of fact and analysis of evidence, Dr. Herman cited a treatment record from December 18, 2018 which recorded that J.B.'s "[pain] is more intense and radiating to upper back and neck at times and feet are hyperneuropathic pain … when shower water touches them. Shower water feels like pebbles or rocks thrown at them." AR 83. Dr. Herman also cited a lumbar spine x-ray taken on that same date, which recorded "[n]o lumbar spine fractures or malalignment." AR 84. Although the findings included the statement that "PE on 12/2018 shows pain b/l 60 degrees SLR, ROM: pain radiates to post knee b/l," Dr. Herman's final writeup on February 7, 2019, was brief, noting that J.B.'s lumbar spine x-ray was "w/o significant degent changes" and affirming Dr. Bradus's assessment. AR 84. Dr. Herman's assessment of J.B.'s residual functional capacity was identical to Dr. Bradus's. AR 86–87.

The ALJ found these opinions "only somewhat persuasive" because the opinions were "somewhat consistent with and supported by the record." AR 21. Specifically, the ALJ wrote that although the opinions "accurately reflect the claimant's frequent-to-occasional postural limitations in relation to the severity of his lumbar degenerative disc disease," the opinions "ultimately overstate the claimant's exertional capabilities by giving insufficient weight to the effect of the claimant's environmental limitations, and also overstate the severity of his diabetes mellitus." AR 21–22. The ALJ also noted that "these opinions predate at least part of the relevant period, including the claimant's improved diabetes symptoms." AR 22. In doing so, the ALJ cited

6

generally to J.B.'s treatment records from the time periods of January 17, 2018 to September 20, 2018, and September 28, 2018 to August 23, 2019. AR 21–22.

The Court finds that the ALJ's explanation of the "somewhat" persuasiveness of the state agency medical consultants' opinions is narrowly supported by substantial evidence. First, the ALJ correctly noted that these opinions, written in November 2018 and February 2019, "predate at least part of the relevant period." AR 22. Critically, these opinions predate a May 2019 lumbar spine MRI that revealed "severe facet arthropathy" and "severe central stenosis," AR 396, 404, as well as a June 2019 lumbar spine examination by Jorge Kim, M.D., that revealed J.B.'s "[a]ntalgic gait, stiff with walking" and a "[p]ositive right sided straight leg raise." AR 404. At that June 2019 examination, Dr. Kim diagnosed J.B. with "[l]umbar stenosis with neurogenic claudication" and "lumbar facet arthropathy." AR 405. Second, the ALJ correctly observed that the opinions "ultimately overstate the claimant's exertional capabilities by giving insufficient weight to the effect of the claimant's environmental limitations." AR 21–22. Although the ALJ did not describe what these "environmental" limitations were, the record reflects that at the June 2019 exam, Dr. Kim recorded that J.B.'s "[w]orsening activit[i]es are lifting > 15 lbs. Helpful activities are lying supine, and walking." AR 403.

On October 10, 2019, Sharonne Rogers, N.P., completed a form titled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." AR 419–21. The form included checkboxes and checklists for Ms. Rogers to complete, as well as space for Ms. Rogers to explain what medical findings supported her assessment of J.B.'s limitations. *Id.* Ms. Rogers opined that J.B. had a maximum ability to lift and carry 20 pounds on an occasional basis (up to 1/3 of an 8-hour workday), as well as a maximum ability to lift and carry 25 pounds on a frequent basis (1/3 to 2/3 of an 8-hour workday). AR 419. She also opined that during an 8-hour workday with normal breaks, J.B. had a maximum ability to stand and walk less than two hours, and a maximum ability to sit about two hours. *Id.* She further opined that J.B. would need to shift at will from sitting to standing/walking, and, at unpredictable intervals during a work shift, to lie down. *Id.* As support for these limitations, she cited the May 22, 2019 MRI of J.B.'s lumbar spine. AR 420.

As for J.B.'s ability to perform postural activities, Ms. Rogers opined that J.B. could

7

"never" perform stooping, kneeling, crouching, or crawling; only "occasionally" could he climb stairs/ladders. AR 420. Ms. Rogers also opined, citing "imaging studies," that on occasion J.B.'s ability to push/pull would be affected by his impairments. AR 420. With respect to J.B.'s environmental restrictions, Ms. Rogers opined, citing J.B.'s MRI, that J.B. should "avoid all exposure" to extreme cold, extreme heat, wetness, and humidity. AR 420. She further wrote that J.B. would "need to stand [and] avoid prolong[ed] sitting." AR 421. She anticipated that J.B.'s impairments or treatment would cause him to be absent from work more than three times a month, and would interfere for 50% of the day with his concentration or pace of work. AR 421.

The ALJ found this opinion only "somewhat persuasive" because it was "somewhat consistent with and supported by the record." AR 22. Namely, the ALJ reasoned that the opinion was consistent with the record because it accounted for J.B.'s ability to "only [] sit for one hour at a time due to his need to alternate positions," as well as J.B.'s postural limitations related to climbing and overall environmental limitations, "especially in light of the positive findings from his May 2019 lumbar spine MRI and given that poor weather aggravates his pain." AR 22. However, the ALJ reasoned that the opinion (1) "contradicts itself by stating that the claimant is able to lift and carry 20 pounds occasionally, but lift and carry even more weight frequently"; (2) "overstates the claimant's need for unscheduled breaks"; (3) "assigns him excessive postural limitations compared to what is seen in his sparse treatment records"; (4) "fails to justify why he would be limited to pushing and pulling on occasional basis when he has not demonstrated any weakness or impaired functioning of his upper extremities"; and (5) "[fails to justify] why he would be absent from work more than three days a month." AR 22.

The Court finds that overall, these reasons for partially discounting Ms. Rogers's opinion are not supported by substantial evidence. As an initial matter, J.B.'s treatment records are not "sparse." On September 6, 2018, J.B. was diagnosed with sciatica (a form of low back pain) by Ms. Rogers, who recommended "no lying, sitting, or standing for extended times" and to "not sit longer than 20 minutes if back pain is severe." AR 300–301. Ms. Rogers also recommended that J.B. "not sit longer than 50 minutes without getting up and walking around 5 to 10 minutes." AR 301. At this appointment, J.B. scored "10/10" on the "Numeric Pain Intensity Scale." AR 303.

8

At J.B.'s follow-up visit on September 20, 2018, Ms. Rogers added further instructions to her assessment of J.B.'s "[l]ow back pain," writing: "No lifting or pulling." AR 294.

On October 2, 2018, J.B. saw a physical therapist who recorded that J.B. "presents with excruciating low back pain" and that he was "off work now for recovery." AR 371. At its worst, the pain was "8/10" and "radiating," "aching," "dull," "throbbing," and "[s]harp, shooting." AR 371. He was "[u]nable to lift anything at all without pain" and "[u]nable to do ADL's like house chores, reaching up, shower without pain." AR 372. Even "[l]ying down on [his] back" aggravated the pain. AR 371.

At J.B.'s next visit with Ms. Rogers on December 18, 2018, Ms. Rogers recorded that J.B.'s "[b]ack pain [was] worsening" and that he required "more Gabapentin and also [an] increase in Tramadol." AR 343. J.B.'s pain was "more intense and radiating to upper back and neck at times." AR 343. At this time, an x-ray was taken of J.B.'s lumbar spine. AR 350, 380. Although the x-ray showed normal alignment, no fractures, and no significant degenerative changes, Ms. Rogers also ordered that an MRI of J.B.'s lumbar spine be taken prior to J.B.'s next appointment. AR 348. A few months later, at a visit with Dr. Kim, he diagnosed J.B. with "[l]ow back pain" and "[l]umbar radiculopathy" and recorded that J.B.'s "[w]orsening activit[i]es are lifting > 15 lbs. Helpful activities are lying supine, and walking." AR 390, 392.

On May 22, 2019, an MRI was taken of J.B.'s lumbar spine. AR 396. The reviewing doctor, Dr. Chung Hoon Lee, found that "[s]evere bilateral facet arthritis is demonstrated at L3-4 and L4-5. … Severe central spinal stenosis and bilateral lateral recess stenoses are noted at L3-4 and L4-5." AR 396. At a follow-up appointment on June 3, 2019, Dr. Kim diagnosed J.B. with "[l]umbar stenosis with neurogenic claudication" and "[l]umbar facet arthropathy." The last treatment notes in the record, dated August 23, 2019 and recorded by Ms. Rogers, describe pain rated "9/10" on the numeric pain intensity scale, in J.B.'s "back and both legs." AR 412–13.

Accordingly, the Court finds that the ALJ's persuasiveness explanation of Ms. Rogers's October 10, 2019 opinion is not supported by substantial evidence. As demonstrated by the Court's review of J.B.'s treatment records, Ms. Rogers did not overstate the claimant's need for unscheduled breaks or assign him excessive postural limitations. Furthermore, although Ms.

9

Rogers did not write lengthy explanations of the medical findings supporting J.B.'s limitations, J.B.'s limitation to occasional pushing/pulling is consistent with Ms. Rogers's earlier direction to J.B. on September 20, 2018 ("No lifting or pulling"), as well as her notes on December 18, 2018 that J.B.'s pain radiated to his upper back and neck at times. AR 294, 343. Ms. Rogers's assessment that J.B. would be absent from work more than three times a month due to his "impairments or treatment," AR 421, is equally consistent with her direction to J.B. not to engage in "lying, sitting, or standing for extended times" and "not sit longer than 20 minutes if back pain is severe," AR 300–301, as well as with the "excruciating" and "intense" back pain recorded, AR 343, 371. Finally, the Court acknowledges that Ms. Rogers's opinion contradicts itself with respect to J.B.'s ability to lift and carry 20 pounds occasionally but 25 pounds frequently. *See* AR 419. However, aside from this one internal inconsistency, the remainder of Ms. Rogers's opinion is internally consistent and consistent with other evidence in the record. The ALJ did not properly account for the consistency of Ms. Rogers's opinion with the medical evidence in the record. *See* 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from *other* medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.") (emphasis added).

Thus, although the ALJ's conclusion that the opinions of the state agency medical consultants are only "somewhat" persuasive is supported by substantial evidence, her conclusion that Ms. Rogers's opinion is only "somewhat" persuasive is not. Most of the reasons given by the ALJ for finding Ms. Rogers's opinion only "somewhat" persuasive overlook the medical evidence that is consistent with her opinion. The ALJ therefore erred in making this finding, and this error warrants remand.

### B. J.B.'s Testimony Concerning His Limitations

J.B. also argues that the ALJ erred in determining that J.B.'s statements about his limitations are not consistent with the medical evidence. In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected

10

to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Id*. (quoting *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.").

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" without pointing to any affirmative evidence of malingering. AR 20. Thus, the ALJ needed to provide "specific, clear and convincing reasons" for rejecting J.B.'s testimony concerning the intensity, persistence, and limiting effects of his symptoms. *Tommasetti v. Astrue*, 533 F.3d at 1039.

At the hearing before the ALJ, J.B. testified that on a daily basis he experiences "back pain down to the legs." AR 41. He explained, "it's just a constant pain with my legs to where if I was taking a shower it hurt so bad because the water coming down it feels like rocks being dropped on your feet." AR 42. He continued that recently, the pain in his back was "[d]efinitely worse and I'm noticing when it's cold it's even worser." AR 42. He said that when he took medication, "the pain is still there but it's more tolerable." AR 43. The "pain pills" also made him "definitely drowsy" to a point where he was unable to perform tasks around the house without help. AR 43. He would not trust himself to take care of his kids while on this medication. AR 50–51. When the ALJ asked if J.B. could possibly work a job less physically strenuous than construction if he took a less potent medication, J.B. said, "I don't see me being able to work on a job and take medication that would help the pain." AR 56.

Upon examination by the ALJ, J.B. testified that he was unable to bend over and could pick up "[a]bout 15, 20 pounds." AR 44. He continued that although he could "walk a mile," he would have to rest periodically, "tak[ing] a rest every block" or every "[f]ive minutes." AR 47. He added that he used a cane. AR 48. If he sat for an hour, he "would be in pain for sure." AR 49. If he sat for 20 minutes, he would "definitely" need to get up. AR 50. As for standing, he

11

could stand for 20 to 30 minutes without needing to sit or lie down. AR 51.

The ALJ found that J.B.'s statements concerning the nature and limiting effects of his symptoms are "not entirely consistent with the medical evidence and other evidence in the record" because "the objective medical findings in the record revealed largely unremarkable findings and symptoms that improved or were otherwise reasonably controlled with conservative treatment modalities." AR 20. Specifically, after summarizing J.B.'s treatment records through December 2018 and the May 2019 MRI scan of J.B.'s lumbar spine, the ALJ pointed to several facets of J.B.'s treatment records: (1) treatment notes from September 2018 indicated that J.B.'s back pain was relieved with the medication Baclofen; (2) the December 2018 x-ray of J.B.'s lumbar spine revealed negative findings; (3) J.B. exhibited negative findings for tenderness to palpation and full motor strength at a physical exam in March 2019; (4) J.B. presented with a pain level of "0/10" in May 2019; and (5) J.B. declined steroid injections after he was recommended them. AR 21.

The Court does not find the ALJ's reasons for rejecting J.B.'s testimony to be clear and convincing. First, the ALJ's discussion of J.B.'s treatment records from 2018 does not accurately describe the limitations reflected in those records. Ms. Rogers's treatment notes for J.B.'s September 20, 2018 appointment state that "Baclofen really relaxes back for him," but the notes also include Ms. Rogers's patient plan for J.B., which instructed: "No lifting or pulling" and "no lying, sittin[g], or standing for extended times." AR 294. At J.B.'s next appointment on December 18, 2018, Ms. Rogers recorded that J.B.'s "[b]ack pain [was] worsening," "requir[ing] more Gabapentin and also increase in Tramadol." AR 343. The pain was "more intense and radiating to upper back and neck at times." AR 343. The findings from the December 2018 x-ray of J.B.'s lumbar spine made no mention of J.B.'s pain levels or limitations; the physician who read the x-ray reported only that no fractures had been seen and that his spine appeared normal, without significant degenerative changes. AR 380.

Second, the ALJ appears to have selectively relied upon excerpts of J.B's 2019 treatment records. While the ALJ correctly observed that J.B. presented full motor strength and negative tenderness to palpation at his physical exam on March 6, 2019, she did not acknowledge that at that same exam he also presented with an antalgic gait that was stiff with walking and a "[p]ositive

right sided straight leg raise" and "[p]ositive pain with bilateral lumbar facet extension loading." AR 391. At this appointment, he also presented with a pain level of "7/10." AR 394. Further, although J.B. had a pain level of "0/10" at his May 13, 2019 appointment with Ms. Rogers, one week later, a May 22, 2019 MRI of his lumbar spine revealed "[s]evere bilateral facet arthritis" and "[s]evere central spinal stenosis." AR 396. Finally, to the extent the ALJ relied on J.B.'s "refusal" of steroid treatment to find his testimony inconsistent with the medical evidence, the ALJ's characterization of J.B.'s declination of steroid treatment does not adequately account for Dr. Kim's notes, which state: "Pt does not desire to try injections given the inherent risks." AR 405. J.B.'s declination of a treatment with "inherent risks" is not substantial evidence of an inconsistency between his testimony and the medical evidence of record.

In sum, the ALJ's reasons are not clear and convincing. As the Ninth Circuit has emphasized, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The records cited by the ALJ do not provide substantial evidence for her conclusion that J.B.'s description of his limitations was not entirely consistent with the record. The ALJ's discussion of the evidence ignores other evidence in the record that contradicts the ALJ's conclusions. *See Ahearn*, 988 F.3d at 1115 ("To determine whether substantial evidence supports the ALJ's determination, we must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion.") (citation omitted); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)).

**C.    Meeting or Medically Equaling a Listed Impairment**

J.B. next argues that the ALJ erred in finding that J.B.'s impairments do not meet or equal

a listed impairment, because the ALJ did not provide any explanation for this finding and did not schedule a medical expert to provide testimony at the hearing regarding whether J.B. met or equaled Listing 1.04. Dkt. No. 17 at 5–6. The Court agrees in part.

In determining whether a claimant is disabled, the ALJ is required to consider whether the claimant's impairments meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ finds the claimant's impairments meet or medically equal a listed impairment, the claimant is conclusively presumed disabled without consideration of the claimant's age, education, or work experience. *Id.* § 416.920(d). An impairment "*meets* the requirement of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 416.925(c)(3) (emphasis in original). If an impairment does not meet the criteria of a listing, it can "*medically equal* the criteria of a listing." 20 C.F.R. § 416.925(c)(5) (emphasis in original); *see also* 20 C.F.R. § 416.926 ("Medical equivalence for adults and children"). Under the guidance provided by the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX), an ALJ must obtain a medical expert opinion in three situations: (1) "when the Appeals Council or Federal court ordered an ME opinion"; (2) "[t]here is a question about the accuracy of medical test result reported"; and (3) "[t]he ALJ is considering finding that the claimant's impairment(s) medically equals a listing." Social Security Administration, HALLEX I-2-5-34 ("When to Obtain a Medical Expert Opinion") (last updated Jan. 21, 2020).

Here, the ALJ found that J.B. does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. The ALJ's explanation was brief: "No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, not does the evidence show medical findings that are the same or equivalent to those of any listed impairment." Because none of the three mandatory situations requiring a medical expert opinion applied, the ALJ was not required by agency policy to obtain a medical expert opinion. *See* Social Security Administration, HALLEX I-2-5-34. However, the Court finds the ALJ's cursory

14

explanation of her listings finding inadequate for two reasons.

First, Ninth Circuit law is clear that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *see also Lewis v. Apfel*, 263 F.3d 503, 512 (9th Cir. 2001) ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listed impairment]."). This precedent is perhaps in conflict with the Commissioner's 2017 policy interpretation of regulations 20 C.F.R. § 404.1526 and 20 C.F.R. § 416.926, which states that "[g]enerally, [the adjudicator's] statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." Social Security Ruling (SSR) 17-2p: Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings About Medical Equivalence, 82 Fed. Reg. 15265 (Mar. 27, 2017). But the Court must still apply the standard of "substantial evidence" in reviewing the rationale for the ALJ's decision. *See* 42 U.S.C. § 405(g) ("Judicial review") (findings of the Commissioner as to any fact shall be conclusive "if supported by substantial evidence"); *see also Zuniga v. Barr*, 946 F.3d 464, 470 (9th Cir. 2019) (a court "need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the statute under which the regulations were promulgated") (citing *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017)). Accordingly, the Court finds that the ALJ's cursory explanation was not supported by substantial evidence.

Second, the ALJ's explanation contradicts the medical evidence in the record. Listing 1.04(C), as defined when the ALJ issued her decision,[6] requires "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

---

[6] *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

15

effectively, as defined in 1.00 B2b." Social Security Administration, DI 34121.013 Musculoskeletal Listings from 09/29/16 to 04/01/21, Program Operations Manual System (POMS). Here, J.B.'s May 2019 MRI of his lumbar spine revealed "severe central spinal stenosis" and "bilateral lateral recess stenoses." AR 396. Dr. Kim diagnosed J.B. with "lumbar stenosis and neurogenic claudication"[7] on June 3, 2019, and Ms. Rogers provided the same assessment on August 23, 2019. AR 405, 409. Further, J.B. testified at his hearing that he used a cane and would have to rest periodically while walking, "tak[ing] a rest every block" or every "[f]ive minutes." AR 47, 48.

Accordingly, the Court finds that the ALJ's determination that J.B.'s impairment(s) do not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 is not supported by substantial evidence. On remand, the ALJ must reconsider whether J.B. meets a listed impairment.

### D. J.B.'s Residual Functional Capacity

J.B.'s final argument is that the ALJ erred in assessing his RFC because the ALJ, by giving no medical opinion controlling weight, "substituted her own judgment for that of the medical professionals qualified to assess Mr. Bowie's impairments." Dkt. No. 17 at 6–8. Although the Court does not agree with J.B.'s argument, because the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 416.920c(a), the Court agrees that the ALJ must reevaluate J.B.'s RFC.

As part of the disability evaluation process, the ALJ must assess the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). The RFC measures the most the claimant can still do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). The RFC must incorporate all of the limitations supported by the evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (in assessing a claimant's ability to work, the ALJ "is not free to disregard properly supported

---

[7] Neurogenic claudication is a synonym for pseudoclaudication. *See* Timothy Deer, M.D., et al., A Review of Lumbar Spinal Stenosis with Intermittent Neurogenic Claudication: Disease and Diagnosis, 20 Pain Medicine S32, S34 (2019) ("Intermittent neurogenic claudication (INC), also referred to as pseudoclaudication, is the most common clinical presentation of LSS [lumbar spinal stenosis], manifested as back pain, leg pain, and weakness that significantly compromises the ability to ambulate.").

limitations").

Here, the ALJ did not fully incorporate Ms. Rogers's assessment of numerous limitations and restrictions into J.B.'s RFC, because the ALJ found those assessments only "somewhat persuasive." AR 22. Further, the ALJ did not incorporate J.B.'s testimony about his limitations into his RFC, because she found his testimony "not entirely consistent" with the record. AR 20. Since neither the ALJ's persuasiveness determination nor her rejection of J.B.'s testimony was supported by substantial evidence, the ALJ's decision to exclude the assessed limitations into the RFC also lacks the support of substantial evidence. On remand, after properly assessing the persuasiveness of Ms. Rogers's opinion and considering J.B.'s testimony, the ALJ must reevaluate J.B.'s RFC.

## IV. DISPOSITION

J.B. asks the Court to remand for payment of benefits under the credit-as-true doctrine. Dkt. No. 17 at 10–11. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (citation omitted). The Court may remand for an immediate award of benefits only where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. at 1045 (citations omitted). Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings when the record as a whole creates serious doubt as to disability. *Id*. (citations omitted).

The credit-as-true standard is not satisfied here. There are further issues that must be resolved before a final determination can be made. As discussed above, on remand the ALJ must reconsider: (1) the persuasiveness of Ms. Rogers's opinions; (2) J.B.'s testimony about his limitations; (3) whether J.B. meets a listed impairment; and (4) J.B.'s RFC.

## V. CONCLUSION

Based on the foregoing, J.B.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: January 31, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge